UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FILED
97 FEB 21 PM 2:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

TERESA KILLIAN,                )
                               )
        Plaintiff,             )
                               )
    vs.                        )    CV 96-L-1810-M
                               )
PROVIDENT LIFE AND ACCIDENT    )
INSURANCE COMPANY; SOUTHERN    )
COMPANY SERVICES, INC.,        )
                               )
        Defendants.            )
                               )

ENTERED
FEB 21 1997

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This cause came on for trial before this court, without the intervention of a jury, on February 5, 1997, upon the pleadings, the order of pretrial conference, the evidence and exhibits, and the arguments of counsel. The court enters the following findings of fact and conclusions of law:

### Findings of Fact

1.   Plaintiff Teresa Killian was an employee of Southern Company Services, Inc. ("SCS") beginning January 13, 1986. While employed there, she was covered under the SCS Long-Term Disability Plan. The version of the plan at issue in this case became effective on January 1, 1990.



2. The plan provides that when a claim for benefits is made, the plan's administrator would first decide whether the claim was due to be granted. Within sixty days of the denial of any claim by the administrator, the claimant could appeal this decision to a committee appointed by SCS. The plan states that this committee has the power to interpret the plan and to decide any disputes which might arise regarding benefit eligibility.

3. The plan provides that a participant would make a claim for benefits by submitting written proof of the claim to the committee. The committee may, at any reasonable time, require a participant to furnish certification by a physician in support of the claim.

4. The plan provides that disability benefits would be paid for up to two years for a disability that prevented an employee from performing each and every duty of his or her job. Benefits would continue after this two-year period only if he or she was unable to engage in any occupation for which the employee was reasonably qualified by training, education, and experience. Further, the plan provides that for disabilities caused by mental or nervous disorders, benefits would be paid only for two years.

5. In April and May of 1993, plaintiff was diagnosed with rheumatic mitral valve disease of the heart.

6. Plaintiff applied for long-term disability benefits under the SCS plan. On December 9, 1993, plaintiff was informed that her application for long-term disability benefits had been denied.

Plaintiff appealed this determination. On August 26, 1994, plaintiff's long-term disability benefits were reinstated by the committee. Defendants paid plaintiff retroactively, as if she had actually begun receiving benefits on September 13, 1993.

7. The August 26, 1994 letter to plaintiff stated that, as plaintiff claimed to be suffering from a mental or nervous disability, her benefits would be limited to a twenty-four month period. On September 12, 1994, plaintiff's attorney wrote defendants and informed them that plaintiff believed she was suffering from a physical, rather than a mental or nervous, disability.

8. At the time that the committee determined plaintiff was to be paid benefits, it made that determination based on the medical information then available to it. The committee was aware that plaintiff had received surgery to remedy her mitral valve disease. It was aware that Dr. Mark Middlebrooks was treating plaintiff for a staph infection. It was aware that, in a consultation with Dr. Vance Plumb, plaintiff stated that she was depressed but was afraid that seeing a psychiatrist would endanger her employment. It was aware that plaintiff's attending physician, Dr. Beverly Warren-Lynch, had diagnosed plaintiff with rheumatic heart disease, pleuritic chest pain, seizures, and depression. It was aware that Dr. Alan Blotcky, a psychologist, had stated that plaintiff's clinical depression, chronic anxiety, and dependent personality disorder would cause her marked difficulties in a work environment. It was aware that Dr. Irwin Lewis had diagnosed

3

plaintiff with sinus headaches. It was aware that plaintiff had told Dr. Frederic Feist that she had previously experienced suicidal tendencies, and that he believed her depression and anxiety disorder would prevent her from holding gainful employment.

9.  On March 1, 1995, Provident Life and Accident Insurance Company ("Provident") became the plan administrator of the SCS Long-Term Disability Plan. On that same day Provident and SCS entered into an agreement of reinsurance under which Provident would reinsure all of SCS's liabilities for benefit payments that arose prior to that date. Thus Provident undertook responsibility paying plaintiff's future benefits.

10. Under the Reinsurance Agreement, Provident was given authority to decide whether preexisting claims for benefits would continue.

11. Beginning July 31, 1995 and continuing for more than six months, Provident made repeated attempts to obtain current medical advice from plaintiff's attending physician, Dr. Warren-Lynch. These attempts were unsuccessful.

12. On November 2, 1995, Provident informed plaintiff that it wished to exercise the provision of the SCS Long-Term Disability Plan allowing for a physical examination by someone other than plaintiff's attending physician. Professional Appointment Services was hired to select a board-certified internist. Although she protested, plaintiff did indeed see Dr. Steven Kulback.

13. Dr. Kulback determined that plaintiff was able to perform some occupations for which she was reasonably qualified. In making

4

this determination, Dr. Kulback noted that plaintiff had a medical history that included seizures, migraine headaches, mitral regurgitation, ulcers, bronchitis, sinusitis, staph infections, and depression. He stated in his December 1, 1995 report, "I did not find any physical reasons why [plaintiff] would be unable to return to work on at least a limited basis in a job that did not require more than moderate physical activity. She does not appear to be eager to return to work, and in her correspondence with the insurance company and with physicians she reiterates many reasons why she should not return to work. .... However, the cumulative effect of these [physical] problems has certainly affected her psychologically, and it is certainly possible that her mental health status may prevent her from returning to gainful employment."

    14. On March 31, 1996, Provident informed plaintiff that, effective that day, plaintiff's long-term disability benefits were terminated. In the letter to plaintiff, Provident noted that available medical evidence indicated that she not disabled from any occupation for which she was reasonably qualified, and Provident noted that there was a two-year limit on disabilities caused by a mental or nervous disorder.

    15. On April 7, 1996, plaintiff wrote Provident questioning the termination of her benefits. Provident interpreted plaintiff's April 7, 1996 letter as an appeal of the denial of benefits. On May 8, 1996, Provident informed plaintiff that the committee had denied her appeal because she had failed to provide medical

evidence that she qualified for disability benefits.

16. The termination of plaintiff's benefits was based on all medical information then available to defendants. This included the report from Dr. Kulback as well as all the information that had been available in August 1994 when benefits were first extended to plaintiff. Plaintiff failed to supply any other medical information to defendants.

17. In July 1996, plaintiff first saw Dr. Anne Mason, who had taken over Dr. Warren-Lynch's practice. She has diagnosed plaintiff as suffering from somatization disorder, which is the tendency of translating emotional stresses into clear physical symptoms.

## Conclusions of Law

1. This court has jurisdiction of this action and of the parties thereto.

2. The SCS Long-Term Disability Plan is an employee welfare benefit plan maintained by SCS for the purpose of providing the participants with disability benefits. 29 U.S.C. § 1002(1). This employee welfare benefit plan is also an employee benefit plan, 29 U.S.C. § 1002(3), and as such it is subject to the provisions found in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.

3. Under a de novo standard of review, defendants's termination of plaintiff's long-term disability benefits is not due to be overturned. Under a de novo standard, the court focuses on

the terms of the plan and other manifestations of the partes' intent. Firestone Tire and Rubber v. Bruch, 489 U.S. 101, 112-13 (1989); Bedinghaus v. Modern Graphic Arts, 15 F.3d 1027, 1029 (11th Cir. 1994), cert. denied, 115 S. Ct. 426 (1994). Where disputed terms are without ambiguity, the court presumes that the natural meaning of the terms is conclusive evidence of the intent of the parties. Bedinghaus, 15 F.3d at 1029.

4. Under the clear terms of the plan, plaintiff's benefits were due to be ended on September 13, 1995 (two years after they began) because her disability resulted from a mental or nervous disorder. Further, all available medical evidence indicates that there was no physical reason why plaintiff would have been unable to engage in an occupation for which she was reasonably qualified.

5. Plaintiff has failed carry out her duty under the plan of furnishing certification by a physician that there was a physical reason for her disability, and has failed to show that she was unable to engage in an occupation for which she was reasonably qualified. Thus plaintiff has failed to propose any set of facts allowing her to be covered under a reasonable interpretation of this plan. Florence Nightingale Nursing Service, Inc. v. Blue Cross and Blue Shield of Alabama, 41 F.3d 1476, 1481 (11th Cir. 1995), cert. denied, 115 S. Ct. 2002 (1995); Brown v. Blue Cross and Blue Shield of Alabama, 898 F.2d 1556, 1567 (11th Cir. 1990), cert. denied, 498 U.S. 1040 (1991).

6. Because the termination of plaintiff's long-term disability benefits satisfies the <u>de novo</u> standard of review, the court need not pass on which standard of review applies to this claim. See <u>Marecek v. BellSouth Telecommunications</u>, 49 F.3d 702, 705 (11th Cir. 1995); <u>Brown</u>, 898 F.2d at 1567.

DONE this 21st day of February 1997.

_____
SENIOR JUDGE

8